IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ETTA CALHOUN, SHERRY PORTER and CYNTHIA GRAY, individually and on behalf of a class of all persons and entities similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Civil Action No. 18-1022 |
| INVENTION SUBMISSION CORPORATION d/b/a INVENTHELP, TECHNOSYSTEMBS CONSOLIDATED CORP., TECHNOSYSTEMS SERVICE CORP., WESTERN INVENTION SUBMISSION CORP., UNIVERSAL PAYMENT CORPORATION, INTROMARK INC., ROBERT J. SUSA, THOMAS FROST and THOMAS FROST, P.A., | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| This Opinion Also Relates To: Carla Austin, et al. v. Invention Submission Corporation, et al., No. 2:19-cv-01396 and Geta Miclaus, et al. v. Invention Submission Corporation, et al., No. 2:20-cv-681 | ) ) ) ) ) ) | |

**<u>MEMORANDUM OPINION</u>**

Plaintiffs have filed a motion for attorneys' fees and costs and service awards for the named Plaintiffs (ECF No. 241). Plaintiffs have fully articulated the basis for the requested relief both in their supporting brief (ECF No. 242) and during the final fairness hearing held on February 1,

2023. Defendants do not contest the requested awards. For the reasons that follow, Plaintiffs' motion will be granted.[1]

## I. Attorneys' fees

Under Federal Rule of Civil Procedure 23(h), class counsel may apply to a court for an award of attorneys' fees. Fed. R. Civ. P. 23(h). The Court of Appeals for the Third Circuit has explained that "a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 187 (3d Cir. 2005) (quoting *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 820 n.39 (3d Cir. 1995)).

As the Court of Appeals has explained:

> There are two primary methods for calculating attorneys' fees: the percentage-of-recovery method and the lodestar method. "The percentage-of-recovery method is generally favored in cases involving a common fund, and is designed to allow courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" "The lodestar method is more commonly applied in statutory fee-shifting cases, and is designed to reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation."

*In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 732 (3d Cir. 2001) (quoting *In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998) (footnotes omitted)). Both methods of calculation will be addressed below.

---

[1] The parties have fully consented to jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Civ. A. No. 18-1022, ECF No. 62.)

A. Percentage-of-Recovery Method

In *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 1990), the Third Circuit directed that, when analyzing a fee award in a common fund case, a district court must consider several factors, including:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Id.* at 195 n.1.

In *In re Prudential*, the Third Circuit identified three other factors that may be relevant and important to consider: (1) the value of benefits accruing to class members attributable to the efforts of class counsel rather than the efforts of other groups, such as government agencies conducting investigations, (2) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained, and (3) any "innovative" terms of settlement. 148 F.3d at 336-40.

Plaintiffs' counsel seeks attorneys' fees of $1.5 million. To assess whether this request is reasonable, the Court must consider the aforementioned *Gunter* and *Prudential* factors, "many of which are similar to the *Girsh* factors." *In re AT & T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006) (citing *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)). As addressed in the Opinion granting Plaintiffs' motion to approve the settlement, the proposed settlement satisfies all of the *Girsh* factors and is fair and reasonable.

The first *Gunter/Prudential* factor is the size of the fund and the number of persons who will benefit. The Court has already concluded that Settlement Class Members will derive substantial economic and non-economic benefits, as well as enhanced processes to be implemented

by the InventHelp Defendants for the benefit of current and future customers, as a result of the settlement. (Carson Decl. ¶¶ 35-38) (ECF No. 241 Ex. 2.)

The monetary settlement relief includes $3 million to be paid into a Gross Settlement Fund.[2] In addition, as more fully described in the Settlement Agreement ("SA") (ECF No. 230 Ex. 1), monetary payments to Settlement Class Members include: $20 cash outside the Gross Settlement Fund for each customer who fully paid for their BIP Agreement who submits a Claim Form deemed timely and valid by the Settlement Administrator; a $20 credit outside the Gross Settlement Fund against the outstanding balance for each customer who has not fully paid for their BIP Agreement who submits a Claim Form deemed timely and valid by the Settlement Administrator; an election of an $800 credit outside the Gross Settlement Fund against the outstanding balance or services valued at not less than $3,000 for each of the SUB customers who have SUB Agreements that are Not Fully Paid and Open who submits a Claim Form deemed timely and valid by the Settlement Administrator; up to a $1,500 credit outside the Gross Settlement Fund against the outstanding balance for each of the SUB customers who have SUB Agreements Not Fully Paid and Closed; a pro rata payment of up to $250 from the Net Settlement Fund and services valued at not less than $3,000 for each of the SUB customers who have SUB Agreements that are Fully Paid and who submit a Claim Form deemed timely and valid by the Settlement Administrator; and credit repair and negative tradeline deletion request services. (SA ¶¶ 65-70; Carson Decl. ¶¶ 35-37.)

As reported by the Settlement Administrator, Angeion Group, LLC, 9,556 claim forms have been submitted, reflecting that the notice process that was implemented was effective. Moreover, based upon the $3 million Gross Settlement Fund, the credit of $1,500 that 4,487 class

---

[2] Capitalized terms are defined in the Settlement Agreement.

members with SUB Agreements Not Fully Paid and Closed will automatically receive without submitting a claim form and the additional monetary relief outside of the Gross Settlement Fund outlined above, the settlement value is many multiples of the $1.5 million fee award that has been requested.

Plaintiffs represent that the requested fee will represent far less than one-third of the total settlement value. Although there is no consensus on how to determine a reasonable percentage, "several courts in this circuit have observed that fee awards under the percentage-of-recovery approach typically range from 19% to 45% of the settlement fund, with 25% being the median award." *Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 341 (W.D. Pa. 1997), *aff'd*, 166 F.3d 581 (3d Cir. 1999). Thus, Plaintiffs' request is well within the range of reasonable attorneys' fees.

The second *Gunter/Prudential* factor requires an assessment of the presence or absence of substantial objections to the settlement terms and/or fee proposal by Settlement Class Members. As outlined in the Opinion approving the settlement, appropriate notice of the proposed settlement and the process by which to submit objections was provided to over 52,000 Settlement Class Members. Out of that number, only 26 filed objections. While the objectors complained that the settlement is unfair because it does not provide complete relief, this is not appropriate measurement or consideration. *See In re Gen. Motors*, 55 F.3d at 806 ("after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution.")

Only one objector challenges the requested attorneys' fees, stating that Class Counsel would be awarded too much "without suffering from InventHelp." However, this conclusory objection does not discuss any relevant factors, including why the fees are excessive. *See Jackson v. Wells Fargo Bank, N.A.*, 136 F. Supp. 3d 687, 714 (W.D. Pa. 2015) (rejecting objections relating to attorneys' fees where the quantity and content of the objections are simply insubstantial and in

light of the court's analysis of the fee request); *In re AT & T,* 455 F.3d at 173 (affirming district court fee award and finding that "[i]n light of its analysis under the fee award reasonableness factors and the reasonable lodestar multiplier, the District Court did not abuse its discretion in concluding the fee award was not excessive.").

Thus, this factor weighs in favor of approving the fee request. *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 321 (3d Cir. 2011) (reviewing the *Girsh* factors for settlement fairness and finding "the minimal number of objections and requests for exclusion are consistent with class settlements we have previously approved."); *Jackson*, 136 F. Supp. 3d at 714 (where quantity and content of objections "simply insubstantial" factor supports fee request).

The third *Gunter/Prudential* factor is the skill and efficiency of the attorneys involved. "The skill and efficiency of class counsel is measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *20 (D.N.J. Apr. 8, 2011) (citations omitted). As discussed in the Court's Opinion which granted final approval of the settlement:

> All plaintiffs retained competent counsel who are experienced in the prosecution of consumer protection class actions, deeply familiar with the legal and factual issues involved in this matter and highly qualified. (Carson Decl. I ¶¶ 2-8; Carson Decl. II ¶¶ 3-5) (ECF Nos. 230 Ex. 2; 241 Ex. 2.) Lead Class Counsel diligently prosecuted the claims at issue on behalf of Plaintiffs and the Settlement Class. (Carson Decl. I ¶¶ 9-37; Carson Decl. II ¶ 11-30; Plitt Decl. ¶ 5) (ECF No. 241 Ex. 3.) Class counsel have demonstrated a high level of skill and competence in conducting the litigation to date and have invested thousands of hours in pursuit of the claims of the class.

(ECF No. 254 at 15-16.) The significant level of counsel's experience, skill, diligence and competence positioned Plaintiffs to resolve this dispute on fair and reasonable terms while avoiding the uncertainty of continued litigation.

As noted in *In re KeySpan Corp. Sec. Litig.*, 2005 WL 3093399, at *11 (E.D.N.Y. Sept. 30, 2005), "[t]he quality of opposing counsel is also important in evaluating the quality of Class Counsel's work." As the history of these class actions conclusively demonstrates, the interests of the InventHelp Defendants were vigorously, capably and skillfully represented by attorneys from K&L Gates, LLP, a global law firm with substantial resources. *See Lan v. Ludrof*, 2008 WL 763763, at *23 (W.D. Pa. Mar. 21, 2008) ("Plaintiffs' Counsel were confronted with a formidable opposition throughout the course of these proceedings, and their substantial achievement for the Class is thereby all the more compelling"). Accordingly, the third *Gunter/Prudential* factor strongly supports the requested fee.

The fourth *Gunter/Prudential* factor requires consideration of the complexity and duration of the litigation. Class Counsel represents that prior to commencing litigation, they expended time and resources investigating the facts relating to Defendants' conduct and potential legal remedies, reviewed documents provided by potential plaintiffs, and organized and coordinated additional clients for amended and additional complaints. Moreover, as discussed more fully in the Court's Opinion granting final approval of the settlement, these class actions relate to complex factual and legal issues and have been aggressively and comprehensively litigated for over four years. During that time, the parties have engaged in substantial motions practice and discovery, including information about the financial wherewithal of the InventHelp Defendants. Plaintiffs retained experts to review and analyze the materials and information obtained during discovery. By achieving a significant degree of information regarding the claims and defenses asserted, Class Counsel was able to fully evaluate the strengths and weaknesses of these claims. Armed with this information, which was achieved only after rigorous advocacy, the parties engaged in lengthy settlement discussions facilitated by Judge Lenihan, ultimately culminating in the Settlement

Agreement. Thus, the complexity and duration of this matter strongly support approval of the fee request. *See Jackson*, 136 F. Supp. 3d at 714 (fees supported when "matter was initiated nearly 3 years ago and has involved several complex questions of law and fact").

The fifth *Gunter/Prudential* factor, "the risk of nonpayment" for hours expended, is significant in class action cases in which a contingent fee is involved. Class Counsel assumed a substantial risk in filing and litigating this matter, which involved the investment of a considerable amount of attorney time, effort and money, on a fully contingent basis with no guarantee of any recovery. (Carson Decl. ¶ 41.) This weighs in favor of the requested fee. *See Brumley v. Camin Cargo Control, Inc.*, 2012 WL 1019337, at *11 (D.N.J. Mar. 26, 2012) ("Counsel took on the costs of litigation despite their lack of certainty that the Court would find that Defendants violated the FLSA, constant negotiations with Defendants regarding the Plaintiffs' recovery based on the number of hours worked, the potential for decertification of the class once conditionally certified, and risks in changes in the law and appeals.")

Moreover, Class Counsel also assumed the risk that even if Plaintiffs ultimately prevailed, they would be unable to collect on a judgment due to Defendants' financial condition. Thus, there was the real possibility that despite devoting significant attorney time and out of pocket costs to this litigation, Class Counsel would receive no compensation at all. *See, e.g., Palamara v. Kings Family Restaurants*, 2008 WL 1818453, at *5 (W.D. Pa. April 22, 2008) (given "obstacles to obtaining a favorable verdict … the risk that class counsel would not be compensated for their work has been real and substantial" which weighs in favor of approving the requested fee). Thus the fifth factor weighs in favor of approving the requested fee.

The sixth factor examines the amount of time devoted to the case by counsel. This factor is well established by Class Counsel's contemporaneously logged time and expense records.

(Carson Decl. ¶¶ 44-56) (noting a total of 5,720 hours for a lodestar of $3,912,652); Plitt Decl. ¶ 9) (ECF No. 241 Ex. 3) (noting a total of 3,074.2 hours for a lodestar of $1,746,604.50). *See Kapolka v. Anchor Drilling Fluids USA, LLC*, 2019 WL 5394751, at *10 (W.D. Pa. Oct. 22, 2019); *Frederick v. Range Resources-Appalachia, LLC*, 2011 WL 1045665, at *12 (W.D. Pa. Mar. 17, 2011). This factor also supports an award of the requested fees.

The seventh factor examines the fee awards in similar cases. The requested fee represents less than one-third of the value of the monetary benefits in the Settlement. Plaintiffs represent that this is well below the percentage fees awarded in similar matters. *See, e.g., Kapolka*, 2019 WL 5394751, at *9 (35% requested fee within "ballpark range"); *Jackson*, 136 F. Supp. 3d at 713 (awarding 25.6% of constructive common fund in attorneys' fees); *Lan*, 2008 WL 763763, at *24 (25% of gross settlement fund is reasonably modest and well within range that courts have awarded in similar cases); *Erie County Retirees Ass'n v. County of Erie, Pa.*, 192 F. Supp. 2d 369, 383 (W.D. Pa. 2002) (granting fee request representing 38% of total fund). The Court agrees that the fee award is similar, if not less than, fee awards in similar cases. Thus, this factor therefore supports approving the fee request.

The eighth factor asks whether the benefits are attributable to the efforts of Class Counsel, as opposed to the efforts of other groups. The Court agrees that the settlement was achieved through the advocacy of Class Counsel, not through the efforts of any other group or entity. As Plaintiffs note, there was no government investigation or inquiry by another group that exposed AIPA disclosure violations and/or fraud on which Plaintiffs relied in bringing suit. *See Lan*, 2008 WL 763763, at *25 (benefits achieved in settlement "attributable predominantly, if not exclusively, to the efforts of Class Counsel who initiated their own investigation and prosecuted this action against highly skilled defense counsel"); *Jackson*, 136 F. Supp. 3d at 715 (settlement "purely is

the product of the effort of class counsel"); *Flores v. Express Services, Inc.*, 2017 WL 1177098, at *4 (E.D. Pa. Mar. 29, 2017) ("Only class counsel, and no other group or agency, has performed work on behalf of the class").

The ninth *Gunter/Prudential* factor requires a comparison between the fee requested to a percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement. A typical private contingent fee is in the range of 33% to 40% of the recovery. Here, as previously discussed, the requested fee represents far less than one-third of the economic benefits that will be provided to Settlement Class Members.

Finally, Plaintiffs assert that the tenth *Gunter/Prudential* factor looks at "innovative" terms of the settlement. This factor is easily satisfied here. The settlement terms provide monetary relief based upon the type of packaged that a class member purchased and the current status of payment obligations. In addition, class members receive credit repair and negative tradeline deletion request services, and the InventHelp Defendants agreed to implement the six processes to address the practices that Plaintiffs challenged in the litigation. The Court concludes that these terms are not only comprehensive, but also represent an innovative and creative approach to the resolution of the claims asserted in these actions.

Thus, having reviewed Class Counsel's submissions and the *Gunter/Prudential* factors, the Court concludes that their request for fees is reasonable and should be awarded.

B. <u>The Lodestar Method</u>

"In addition to the percentage-of-recovery approach, we have suggested it is 'sensible' for district courts to 'cross-check' the percentage fee award against the 'lodestar' method." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (citing *In re Prudential*, 148 F.3d at 333). *See Dungee v. Davison Design & Devt. Inc.*, 674 F. App'x 153 (3d Cir. 2017) (directing award of

attorneys' fees pursuant to lodestar method in AIPA case). The method may be more appropriately applied where the nature of the settlement makes it difficult to make a precise calculation of the value of the settlement. *Id.* at 156.

"The lodestar award is calculated by multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." *Rite Aid*, 396 F.3d at 305. Once the court determines the reasonable hourly rate, "it multiplies that rate by the reasonable hours expended to obtain the lodestar […] [which] is presumed to be the reasonable fee." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (citing *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). A court may adjust the lodestar to take into account, among other things, the result achieved, the quality of the representation, the complexity and magnitude of the litigation, and public policy considerations. *Rite Aid,* 396 F.3d at 305-06.

Here, Class Counsel has submitted exhibits reporting their lodestar using the method endorsed by the Third Circuit. As set forth in the Carson Declaration, Class Counsel together have combined to have expended approximately 8,794.2 hours prosecuting this litigation to date, for a total combined lodestar of approximately $5,659,256.50, which will be slightly higher by the end of this litigation. (Carson Decl. ¶ 50.) The proposed attorneys' fee award of $1,500,000.00 therefore represents a negative multiplier of only 26.5% of Class Counsel's current collective lodestar. (*Id.*)

Class Counsel's negative multiplier is well below the range of multipliers routinely approved by courts in the Third Circuit. *See e.g., In re Cendant Corp. PRIDES Litig.*, 243 F.3d at 742 (citing *In re Prudential*, 148 F.3d at 341) (positive multipliers ranging from one to four frequently awarded); *In re Nat'l Football League Players' Concussion Injury Litig.*, 814 F. App'x

678, 683 n.8 (3d Cir. 2020) ("multiplier of 2.96 [is] within the acceptable range in this Circuit"); *Frederick*, 2011 WL 1045665, at *13 (approving attorneys' fees that reflected 5.95 multiplier and acknowledging that courts in the Third Circuit frequently approve multipliers from 1 to 4 and multipliers in excess of this range are "not completely unusual."); *Lan*, 2008 WL 763763, at *27 (awarding multiplier of 3.04).

When, as here, the requested fee represents a lodestar multiplier of less than one, it "reveals that the fee request constitutes only a fraction of the work that the attorneys billed and thus favors approval." *Altnor v. Preferred Freezer Servs.*, 197 F. Supp. 3d 746, 767 (E.D. Pa. July 18, 2016). "A negative lodestar multiplier is thus 'below the range found to be acceptable by the Third Circuit.' Thus, because the lodestar amount is more than the requested attorneys' fee award, the multiplier indicates that the award is reasonable on its face." *Haught v. Summit Res., LLC,* 2016 WL 1301011, at *12 (M.D. Pa. Apr. 4, 2016) (internal citations omitted).

Thus, whether measured using the percentage-of-recovery method or the lodestar method, counsel has demonstrated that the fee request is fair and reasonable and will be granted.

**II.   Expenses**

In his Declaration, Mr. Carson identifies expenses of $145,335.08 as of the date the motion was filed, which represent costs associated with mediation, copying fees, expert fees, computerized research and travel in connection with this litigation. (Carson Decl. ¶¶ 51, 54-55) Because counsel will incur additional expenses in bringing the case to resolution, including working with the Settlement Administrator, communicating with Class Members, overseeing the settlement administration process, drafting the motion for final approval and attending the hearing, the parties agreed as part of the Settlement Agreement that Plaintiffs would seek reimbursement of expenses up to $150,000.00. (SA ¶ 90.)

These types of costs are appropriate for the prosecution of an action of this nature and are of the type customarily included and routinely charged to clients billed by the hour. The Court concludes that these expenses are reasonable and counsel is entitled to reimbursement of these expenses. *See Abrams v. Lightolier Inc.*, 50 F.3d 1024, 122-25 (3d Cir. 1994).

For these reasons, the costs requested by Plaintiffs' counsel of $150,000.00 will be awarded.

## III.  Service Awards for the Named Plaintiffs

The Settlement Agreement provides that Cynthia Gray, Vim and Kevin Byrne, Geta Miclaus, Carla Austin, and Nil Leone (the "Class Representatives") may apply for service awards of $3,000.00 each. A service award is designed to reasonably compensate class representatives for their additional risk and inconvenience as named plaintiffs. *In re Chambers Dev. Sec. Litig*, 912 F. Supp. 852, 863 (W.D. Pa. 1995) (finding awards of $2,500 reasonable); *Kapolka*, 2019 WL 5394751, at *13 (awarding $5,000 service payments to named plaintiffs and noting that amount is consistent with "if not lower" than awards regularly provided in common fund cases, citing examples ranging from $2,500 to $12,500).

The Court finds that the amounts requested here for the Class Representatives here are well within the range of awards typically granted in similar matters. Moreover, Class Counsel represents that the Class Representatives have made "significant contributions to the litigation and the Settlement, including by retaining counsel, assisting in preparing the complaints, and gathering records and assisting in the preparation of discovery responses, and in the mediation/settlement process." (Carson Decl. ¶¶ 57-59.) Thus, the $3,000.00 service awards requested are reasonable and merit approval.

**IV.     Conclusion**

For the reasons discussed, Plaintiffs' motion for approval of attorneys' fees, expenses and service awards (ECF No. 241) will be granted.

An order will follow.

BY THE COURT:

/s/ Patricia L. Dodge_____
PATRICIA L. DODGE
United States Magistrate Judge

Dated: March 8, 2023